## A95A2848. WILSON v. THE STATE.
(469 SE2d 516)

RUFFIN, Judge.

A jury convicted Danny Wilson of rape, aggravated sodomy, aggravated assault, and burglary. Wilson appeals from the judgment of conviction and the denial of his motion for new trial. For reasons which follow, we affirm.

The evidence at trial showed that early on the morning of November 12, 1991, Wilson, wearing a ski mask and gloves, entered the victim's apartment as she was exiting the shower. Wilson put his hand over the victim's mouth and led her into the living room where he put tape over her eyes. Wilson then put a knife-like object to the victim's neck and proceeded to rape her. After the rape, Wilson led

the victim into the bathroom where he forced her to clean her vagina using a wash cloth and douche. Wilson asked the victim if she had any money or credit cards and she responded that she did not. Wilson then put the douche, wash cloth, and tape from the victim's eyes into a bag, ordered the victim to stay in the bathroom, and left the apartment.

1. Wilson asserts that the trial court erred in failing to excuse three prospective jurors for cause.

During voir dire, Wilson's trial counsel asked the first prospective juror whether she could be impartial in light of the fact that Wilson had a prior conviction. The juror responded: "I just feel like I would lean more that he could possibly be guilty of the second." The trial judge then interposed that he would instruct the jurors on how they could consider the prior offense and asked whether the juror could follow the court's instructions. The juror responded affirmatively and further affirmed that she could be fair and impartial. Wilson argued the prospective juror should have been excused for cause because her answers indicated she could not be impartial.

The second prospective juror stated that she thought DNA evidence was "a good tool," and when asked whether she would focus on the DNA evidence to the exclusion of all other evidence, she responded, "I hope not. . . . I would have to hear it all." Wilson argued this prospective juror should have been excused for cause because her answer indicated she "has some kind of mindset . . . for DNA or against DNA" that was so strong that she may not be able to consider the other evidence.

The third prospective juror to whom Wilson objected stated that her husband had recently undergone surgery and that she was concerned with his health and would need to arrange for someone to care for him. When asked whether she would have difficulty giving her full attention to the trial, the prospective juror reiterated that she was concerned but hoped that she could be a good juror. Wilson argued the juror should have been excused due to her hardship and apparent inability to focus on the trial.

"In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. The fact that a potential juror may have some doubt as to his impartiality, or complete freedom from all bias, does not demand, as a matter of law that the juror be excused for cause." (Citations and punctuation omitted.) *Toledo v. State*, 216 Ga. App. 480, 483 (6) (455 SE2d 595) (1995). "The Supreme Court of the United States has held that '(v)oir dire "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." [Cits.] This is so because the "determination of impartiality, in which de-

meanor plays such an important part, is particularly within the province of the trial judge." ' [Cit.]" *Arnold v. State*, 236 Ga. 534, 538-539 (6) (224 SE2d 386) (1976). Accordingly, absent a manifest abuse of this discretion, we cannot require a new trial. *Diaz v. State*, 262 Ga. 750, 752 (2) (425 SE2d 869) (1993).

We do not find such an abuse of discretion here. Although the first prospective juror initially indicated she might be influenced by the fact that Wilson had a prior conviction, after further questioning by the court she confirmed that she could follow the court's instructions on the proper use of that evidence. Likewise, although the second prospective juror's response may have indicated that she would be persuaded by DNA evidence, she stated that she hoped she would not do so and that she would have to hear all the evidence. The foregoing responses "reflected that [their] purported bias or prejudice was not so fixed that it would not yield to the evidence and that [they] would vote in accordance with the evidence as required by law." *Davis v. State*, 134 Ga. App. 750, 751 (1) (216 SE2d 348) (1975). See also *Watkins v. State*, 160 Ga. App. 9, 11 (4) (285 SE2d 758) (1981) (although potential juror exhibited strong belief in integrity and credibility of police officers, response indicated she would weigh such testimony in light of all the evidence). Finally, we find nothing in the third prospective juror's responses indicating she would not be a fair and impartial juror. Although she stated she was concerned with her husband's health, there was nothing showing that she could not follow the evidence and be fair and impartial. Furthermore, the decision of whether to excuse a juror because of a potential hardship is within the discretion of the trial court. See *McMichen v. State*, 265 Ga. 598, 612 (33) (a) (458 SE2d 833) (1995). Under the facts presented, we find no abuse of that discretion.

2. Wilson also asserts that the trial court erred in allowing the State to introduce evidence of his previous rape conviction and another rape committed one month prior to the rape at issue here.

(a) Wilson argues that one of the similar crimes, his 1979 conviction for rape, was too remote in time and not sufficiently similar to the rape at issue in this case.

" 'Evidence of other criminal acts of the defendant may be admitted if it is substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. . . . To render evidence of extrinsic offenses admissible for any of [the permitted] purposes, the (S)tate must show that the defendant was the perpetrator of the extrinsic offenses, and that there is a sufficient similarity or connection between the extrinsic offense and the offense charged, such that proof of the former tends to prove the latter.' . . . [Cits.]" *Anderson v. State*, 183 Ga. App. 669 (1), 670 (359 SE2d 688) (1987).

" 'Although lapse of time is one of the more important factors to weigh in considering the admissibility of the evidence in question it is not wholly determinative.' [Cit.] Thus, 'lapse of time between the two (offenses does not) automatically require the exclusion of such evidence.' [Cit.] In this case we find that the 12-year lapse between the prior and present offenses does not render evidence of the prior offense inadmissible. [Cit.] In so holding, we are persuaded by the fact that [Wilson] was incarcerated for approximately [nine] of the intervening years, thus circumscribing his ability to commit similar offenses during much of the 12-year period. [Cit.]" Id. at 670-671. See also *Moore v. State*, 207 Ga. App. 412, 415 (1) (b) (427 SE2d 779) (1993).

Furthermore, the use of similar crimes has been liberally extended in cases involving sex crimes. Id. at 414-415. "Where forcible sexual assaults are involved, there is at least much sociological evidence to support the conclusion that this type of deviant sexual behavior is a sufficiently isolated abnormality so that proof of the propensity of the defendant to engage in it is at least admissible, and to this extent proof of the one tends to establish the other." (Citations and punctuation omitted.) Id. at 415 (1) (a).

Moreover, there were numerous similarities between the 1979 rape and the one in this case. In both cases, Wilson lived near the victims, who were both young females, that were raped in their homes in the morning hours. In both cases Wilson blindfolded the victims and put a sharp object to their neck as he raped them. Accordingly, the trial court did not err in admitting evidence of the 1979 rape. This is not to hold, however, that a 12-year previous offense is always admissible but each case must be examined in light of its particular circumstances.

(b) Wilson also contends that the trial court erred in admitting evidence of the second rape because the perpetrator's identity in that rape had not been established and because the probative value of the evidence was substantially outweighed by its prejudicial effect.

The evidence showed that the second rape occurred during the morning approximately one month prior to the rape in this case. The victim was a young female who was raped in her home which was located in the same apartment complex as the victim's home in this case. As in this case, the victim was blindfolded and led to the living room where the perpetrator raped her as he held a knife or a knife-like object to her neck. The perpetrator then forced the victim to clean her vagina using a wash cloth and douche as he did in this case. The perpetrator asked the victim for money, locked her in the bathroom, and left the apartment.

The victim of the second rape described the perpetrator as an African-American male of medium build. The victim also described

warts or moles around the perpetrator's genital area. At trial, the victim of the second rape testified that warts and moles on Wilson's genitals, as depicted in photographs, were in the same location and appeared substantially the same as those on the genitals of the man who raped her. Sperm removed from the victim of the second rape underwent DNA analysis. Blood and hair samples were also taken from Wilson for DNA analysis. A comparison revealed a match between the DNA that occurs with a frequency of approximately one in 10 billion within the African-American population.

Accordingly, "[c]ontrary to [Wilson's] contention, there was evidence upon which the jury could base a finding that he was the perpetrator of the independent crime." *Evans v. State*, 201 Ga. App. 20, 27-28 (7) (410 SE2d 146) (1991). The victim of the second rape was attacked in the same manner as the victim in this case, and the remaining circumstantial evidence pointed to Wilson as the perpetrator of that rape even though the victim was unable to positively identify him. See id.

Finally, we do not agree with Wilson's contention that the prejudicial effect of the evidence outweighed its probative value. The trial court found, and we agree, that the evidence showed that the two rapes were so remarkably similar and close in time and location, that any prejudice from the evidence was outweighed by its probative value. Accordingly, the evidence was properly admitted, and in light of the detailed limiting instructions given by the trial court at the time of its admission, and at the close of the case, the evidence was not overly prejudicial. See *Farley v. State*, 265 Ga. 622 (2), 625 (458 SE2d 643) (1995).

3. Wilson next asserts that the trial court erred in admitting into evidence a copy of a book found at his home during the execution of a search warrant. The book at issue is titled *"The Blooding,"* and was described by a State's witness as a book "based on a true story out of England involving several rape and murder cases where they found the defendant through use of DNA technology." Although the State had photographs of the seized book, the copy police recovered from Wilson's home was inadvertently destroyed after being placed in evidence storage. At trial, the court allowed the State to introduce another copy of the book.

Wilson argues that the court erred in admitting the book because it was a copy and not the actual book seized. However, as the State correctly noted, "Georgia's case law is replete with holdings that articles which are similar to ones used in a crime but are not identical are nevertheless admissible. [Cits.]" *Paxton v. State*, 160 Ga. App. 19, 22-23 (6) (285 SE2d 741) (1981). In this case, the evidence showed that the book the court admitted was identical to the one seized from Wilson's home. Furthermore, "inasmuch as testimony elicited by the

State clearly established that the [book] admitted into evidence was not the one [actually removed from Wilson's home], 'there could be no prejudice such as would infect an otherwise valid verdict and judgment. (Cit.)' [Cits.]" *Boyd v. State*, 264 Ga. 490, 491-492 (2) (448 SE2d 210) (1994). Finally, because Wilson has not shown how he was harmed by the trial court's ruling admitting the copy, this enumeration provides no basis for reversal. *Mobley v. State*, 211 Ga. App. 709, 710 (3) (441 SE2d 73) (1994).

4. While Wilson also argues that the trial court erred by allowing the book to go back with the jury during deliberations, "[t]he trial transcript demonstrates that [he] raised no such specific objection in the trial court. An enumeration of error complaining of admission of evidence or of documents going out with the jury presents nothing for decision by this court where no objection was made at trial. Accordingly, we find this enumeration of error to be without merit." (Citations and punctuation omitted.) *Johnson v. State*, 204 Ga. App. 277, 278 (2) (419 SE2d 118) (1992).

*Judgment affirmed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED MARCH 6, 1996.

*Devon A. Orland*, for appellant.

*J. Tom Morgan, District Attorney, Desiree L. S. Peagler, Jeffrey H. Brickman, Niria Dominguez, Assistant District Attorneys*, for appellee.