## A98A0198. HAWKINS v. THE STATE.
### (497 SE2d 386)

McMurray, Presiding Judge.

Defendant was tried before a jury and found guilty of four counts of aggravated assault by use of a deadly weapon. The evidence adduced at trial revealed that defendant shot at a car containing the four victims, hitting two of them. Officer Fred Black of the Bainbridge Department of Public Safety was dispatched to "J's Place on Albany Road," to investigate a report of "shots fired." He found "nine 9 millimeter . . . spent cartridges," which he concluded had only "been fired recently[, because] [t]hey [were] on top of the ground. They hadn't been [run] over or stepped on." Judging from the position of the casings, Officer Black inferred "[t]he shooter appeared to have been coming out from the side of the building going towards the roadway as he was firing."

Investigator Robert Humphrey was advised by another officer that the victim Willie Fagg identified the shooter by name as defendant. Based on this information, Humphrey prepared a six-picture photographic lineup and showed it to another victim, Tony Taylor. "He [Tony Taylor] immediately pointed at number five which is a photograph of [defendant] Ramu Hawkins."

Fagg testified that he knew defendant from a prior run-in at the Spike Lounge, where, after Fagg engaged in some verbal contretemps with a female, defendant Hawkins and some others came to the female's aid and "rushed [Fagg]. And [defendant] Ramu [Hawkins] was the first person to hit [Fagg]. He hit [Fagg] in the mouth and [Fagg] fell down on [his] hands and knees. . . . The next time [Fagg] saw [defendant] it was anywhere from a couple of weeks to a month later. [Fagg] was . . . at [his] cousin's house and [they] were sitting on the porch. . . . And [defendant] Ramu just happened to be out there. [The cousin,] she just happened to call [defendant's] name. And [Fagg] had one of [his friends] with [him, the subsequent victim] Tony Taylor, and [Fagg] told [Taylor], . . . 'That's the guy that hit me at the Spike that night.' "

On the night in question, Fagg, Taylor, Jimmy Donalson, and Tarrey Butler were riding together in Fagg's car. As they approached J's Place, there were "three or four guys standing right on the corner. And [Fagg] wound the window down and . . . asked one of them was his name Ramu Hawkins and he said, 'No, that's my brother.' . . . [Fagg] wanted to show the guys in the car who it was that hit [him] that night." According to Fagg it was defendant himself "that said, 'That's my brother.' " Fagg told his companions, " 'this is the one that hit me.' " Once inside the club, Fagg saw defendant but there was no confrontation. At about 1:30 a.m., Fagg and his friends decided to leave. As he "got [his car] on the highway [Fagg] noticed a noise that

sound[ed] like — [He] thought somebody was throwing bottles or rocks or something at [the] car. . . ." At this point, he "knew that it was shooting . . . when one of the passengers in the back, Tony said he had been hit in the back. . . . And then Tarrey Butler said he had been hit in the head. He had blood coming out of his head. So . . . [Fagg] hit the gas and . . . took them on to the hospital."

Taylor identified defendant in court as the shooter. He was "[p]ositive . . ." defendant was "the same person that was shooting at the car. When the first bullet hit the window, the front windshield, . . . [Taylor] looked out [his] side window and . . . looked dead at him [defendant]." On cross-examination, Tony was adamant that he saw everything.

The jury found defendant guilty of all four counts of aggravated assault. He appeals directly from the judgment of conviction entered by the trial court on the jury's verdict. *Held*:

1. At trial, defendant moved in limine to exclude evidence of his prior difficulties with Fagg at the Spike Lounge. The State's attorney submitted that such evidence was relevant to establish motive or bad blood and to prove the identity of the shooter. Defendant insisted "a hearing should have been held as to the State's intention to introduce evidence of any similar transaction." The trial court ruled the evidence "is admissible, not necessarily as a prior similar transaction but would bear on the relationship between the parties and the bad blood that might exist between them." In his second enumeration, defendant contends the trial court erred in allowing the State's attorney to introduce evidence of prior conduct without ten days' written notice and a hearing as contemplated by Uniform Superior Court Rule ("USCR") 31.

(a) USCR 31.1 and 31.3 (B) require the State to provide defendant with ten days' written pretrial notice of its intent to introduce "evidence of similar transactions or occurrences. . . ." In 1990, the Supreme Court of Georgia held that USCR 31 "applies to acts which are categorized as similar transactions, as well as to those acts or occurrences which are categorized as prior difficulties." *Loggins v. State*, 260 Ga. 1, 2 (388 SE2d 675). "Here, [for aught that appears of record,] no such notice was provided and its absence was error." *Maxwell v. State*, 262 Ga. 73, 74 (2) (a) (414 SE2d 470). "In *Maxwell*, [the Supreme Court further] observed that the hearing requirements of USCR 31.3 (B) applied to recent difficulties occurring between the accused and the victim . . . ." *Stewart v. State*, 263 Ga. 843, 845 (440 SE2d 452).

Consequently, the trial court in the case sub judice erred in denying defendant's motion in limine, at least pending the outcome of a USCR 31.3 (B) hearing to determine the admissibility of such prior difficulties.

(b) "While the failure to have a [timely-noticed] *Maxwell* hearing was error, we are unable to conclude at this time that the error requires a new trial." *Stewart v. State*, 263 Ga. at 845, supra. "If upon the trial of the case the defense places the defendant's character in issue, evidence of similar transactions or occurrences, as shall be admissible according to the rules of evidence, shall be admissible, the above provisions [of USCR 31] notwithstanding." USCR 31.3 (D).

In the case sub judice, defendant took the stand and explained that the incident at the Spike Lounge got physical when Fagg said to defendant, " 'F you' and [they] exchanged words. And as [they] exchanged words, [they] got closer. So [they] started arguing. Then [defendant and] Mr. Fagg started fighting, which we fell to the ground." Defendant's introduction of evidence corroborating the fact of the fistfight with the victim Fagg renders harmless the erroneous introduction of such character evidence by the State without a prior USCR 31.3 (B) hearing.

2. Defendant's third enumeration contends the trial court erred in admitting evidence of an impermissibly suggestive pre-trial identification, because the photographic array contains only one suspect — defendant — whose hair is in plats.

Defendant moved in limine to exclude State's Exhibit 16, the photographic array shown to Taylor, arguing "the photos used in this photo lineup appear to be mug shots and such use would give impression to the jury that the Defendant has been previously arrested which would place his character in evidence and we would object to the use of the photo lineup." In response, the trial court, using scissors, "removed . . . from the photo lineup the printed matter which says 'Bainbridge Public Safety Department.' " When the State introduced the exhibit during trial, defendant expressed no objection "other than already been expressed in the pretrial motion."

"All evidence is admitted as of course, unless a valid ground of objection is interposed, the burden being on the objecting party to state at the time some specific reason why it should not be admitted. A failure to make such objection will be treated as a waiver. . . ." *Andrews v. State*, 118 Ga. 1 (hn. 1) (43 SE 852). Accord *Lemon v. State*, 80 Ga. App. 854, 855 (1) (57 SE2d 626). While we agree that the photographic array depicting only the prime suspect, i.e., defendant, with his hair in "plats," constitutes a valid basis for challenging that array as impermissibly suggestive, we must conclude that defendant waived any such objection in the case sub judice by failing to urge this specific ground before the trial court. Consequently, this enumeration presents nothing for review.

3. The first and fourth enumerations challenge the sufficiency of the evidence. Defendant argues the testimony of Taylor is incredible.

On appeal from a criminal conviction, the evidence must be con-

strued in the light most favorable to the jury's verdict, and defendant no longer enjoys the presumption of innocence. An appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). *Grier v. State*, 218 Ga. App. 637, 638 (1) (463 SE2d 130); *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381).

"A person commits the offense of aggravated assault when he . . . assaults . . . [w]ith a deadly weapon . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). "The act of intentionally firing a gun at another, in the absence of justification, is sufficient to support a conviction for aggravated assault under this statute. *Steele v. State*, 196 Ga. App. 330, 331 (2) (396 SE2d 4)." *Belins v. State*, 210 Ga. App. 259 (1) (435 SE2d 675). "The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. In the case sub judice, the testimony of Taylor identifying defendant as the shooter is sufficient to authorize the jury's verdicts that defendant is guilty, beyond a reasonable doubt, of the offenses of aggravated assault by use of a deadly weapon as alleged in the indictment.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED FEBRUARY 17, 1998.

*Billy M. Grantham*, for appellant.
*J. Brown Moseley, District Attorney, Victoria Spear-Darrisaw, Assistant District Attorney*, for appellee.