A99A0868. GODBEY v. THE STATE.
(526 SE2d 415)

SMITH, Judge.
Ronald Godbey was convicted of one count of child molestation by a Fayette County jury. His amended motion for new trial was

denied, he appeals, and we affirm.

1. Godbey first asserts that the State failed to comply with the requirements of OCGA § 17-1-1 and Uniform Superior Court Rule 31 concerning notification of the intent to introduce similar transaction evidence. USCR 31.3 requires that the State provide notice of the prosecution's intent to present evidence of a similar transaction: "The notice shall be in writing, served upon the defendant's counsel, and shall state the transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced." USCR 31.3 (B). The notice must be given and filed "at least ten (10) days before trial unless the time is shortened or lengthened by the judge." USCR 31.1.

Godbey points out numerous errors in the State's attempted notice of an alleged similar transaction, including delivery to an erroneous address, a ten-year error in the date of the transaction, and identification of a nonexistent county as the site of the transaction. While a copy of the incorrectly addressed notice was sent by facsimile, it was not received until seven days before trial.

But while Godbey objected to the introduction of the similar transaction evidence during the pretrial hearing conducted pursuant to USCR 31.3 (B), he failed to object to the testimony of the witness at trial and thus failed to preserve his objection for review. *Young v. State*, 269 Ga. 478, 479 (3) (499 SE2d 60) (1998); see also *White v. State*, 225 Ga. App. 74, 75 (2) (483 SE2d 329) (1997).

Godbey also contends that the similar transaction was too remote in time, having occurred approximately eighteen years before trial, and that the facts of the two incidents were too dissimilar. But "[i]n a child molestation case, the sexual molestation of young children, regardless of sex or type of act perpetrated upon them, is sufficient similarity to make the evidence admissible." (Citations and punctuation omitted.) *Ryan v. State*, 226 Ga. App. 180, 181 (2) (486 SE2d 397) (1997). And

> where similar transaction evidence has been admissible otherwise, lapses of time of 11 years and of 19 years have not demanded that the evidence was inadmissible. Further[,] the lapse of time between the prior occurrences and the offenses charged goes to the weight and credibility of such testimony, not its admissibility.

(Citations and punctuation omitted.) *Braddock v. State*, 208 Ga. App. 843, 844 (2) (432 SE2d 264) (1993). See also *Gilstrap v. State*, 261 Ga. 798, 799 (1) (b) (410 SE2d 423) (1991). This enumeration of error therefore is without merit.

The special concurrence's assertion that USCR 31.3 (D) controls

in this case is both incorrect and dangerous. The State presented the similar transaction testimony against Godbey in its case-in-chief. No case cited by the concurrence involves such a situation; in those cases, the State presented its similar transaction evidence on *rebuttal*. Contrary to the concurrence's statement, Godbey did not state his intention to assert a character defense before trial; the concurrence refers merely to his witness list, which included a number of witnesses later called to testify to his good character. But regardless of any pretrial statement or comment in his opening statement — which is not evidence — Godbey might have elected, on the basis of the State's case, not to call character witnesses or indeed any witnesses at all.

The danger of allowing the State to *anticipate* a character defense is that such an assertion could be made in any criminal case on slender grounds, as here, or indeed on none at all. Even if the defendant has listed no witnesses, the defendant himself could still take the stand and testify to his good character. The State could assert in *every* criminal case that the defendant has a *potential* character defense. For that reason, I cannot agree with expanding the exception in USCR 31.3 (D) to the State's case-in-chief. If that is done, the exception will swallow the rule.

2. Godbey's contention that the trial court erred in qualifying Dr. Jane Hayes as an expert witness is also without merit. Hayes holds a Ph.D. in educational psychology and has completed the course work, training, and internship for a second doctorate in clinical psychology. She has worked in the field for approximately 20 years, and approximately 60 percent of her practice is with children and adolescents. She receives referrals from many departments of family and children services and has seen a number of children who have been sexually abused. She has testified as an expert witness on approximately 50 occasions in the superior courts in Georgia.

While Hayes does not hold a license to practice psychology in Georgia, this is not determinative of her qualifications as an expert witness.

> An expert is one whose habits and profession endow him or her with a peculiar skill in forming an opinion on the subject matter in inquiry. This special skill or knowledge may be derived from experience as well as from formal education. Contrary to appellant's argument, we regularly authorize expert certification of witnesses whose expertise lies in fields for which there is no state licensing procedure. The issue is whether the witness has developed specialized knowledge, not whether the State certifies or licenses the specialty.

(Citations and punctuation omitted.) *Sales v. State*, 199 Ga. App. 791 (1) (406 SE2d 131) (1991). Godbey's questions concerning Hayes's qualifications, experience, and close working relationship with the State go to the credibility of her testimony, not its admissibility. Id. at 792. Given Hayes's testimony regarding her education and experience, the trial court acted within its discretion in allowing her to testify as an expert.

While Godbey also contends that Hayes in fact offered no expert testimony and "performed only as a parrot" to repeat the victim's allegations, this assertion is inaccurate. For example, Hayes testified regarding the typical guarded response of children when first questioned about sexual abuse in order to explain the victim's initial reluctance to talk and the inconsistencies in her accounts of Godbey's conduct. "It is well-established that expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves." (Citations and punctuation omitted.) *Pyron v. State*, 237 Ga. App. 198, 199 (514 SE2d 51) (1999) (physical precedent only) (testimony regarding child interview techniques).

Godbey also contends that Hayes's testimony lacked sufficient indicia of reliability under the child hearsay statute, OCGA § 24-3-16, but he has failed to preserve this enumeration of error for review. Before Hayes testified regarding the victim's hearsay statements to her, Godbey moved that the State "limit its questionings to matters within 24-3-16." But Godbey failed to make any further objection to Hayes's testimony, particularly on the basis that it lacked sufficient indicia of reliability under OCGA § 24-3-16.

3. Godbey also complains that the trial court erred in failing to declare a mistrial due to the prosecutor's reading into evidence a portion of Dr. Hayes's report. During the State's direct examination of Hayes, the prosecutor questioned her regarding the interviewing process and the typical reticent initial responses of children to questioning regarding sexual abuse. In the course of this examination, the prosecutor began to read into evidence a portion of a report Hayes had prepared: "Let me find the exact language so I make sure I state it correctly. You said she presents her information in a credible manner and presents symptoms consistent with those — ." At this point, Godbey's counsel objected. The trial court gave an immediate curative instruction that "credibility of any witness is for you to determine. You will get instructions on that at a later time. And it is not for any other witness to tell you what the credibility of another witness is." Godbey renewed his motion for mistrial after the curative instruction. As the trial court stated during the initial curative instruction, it also instructed the jury on its role as the determiner of

credibility on two separate occasions during its main charge.

It is well established that "[t]he credibility of a witness is a matter to be determined by the jury under proper instructions from the court." OCGA § 24-9-80. "In no circumstance may a witness'[s] credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth." (Citations and punctuation omitted.) *Roberson v. State*, 214 Ga. App. 208, 210 (4) (447 SE2d 640) (1994). " '(I)t is not the function of witnesses to determine the veracity of other witnesses.' [Cit.]" *Golden v. State*, 233 Ga. App. 703 (1) (505 SE2d 242) (1998). This rule has been stated explicitly by this court on many occasions. See, e.g., *Buice v. State*, 239 Ga. App. 52, 55-56 (2) (520 SE2d 258) (1999); *Putnam v. State*, 231 Ga. App. 190, 192 (498 SE2d 340) (1998) (physical precedent only); *Hilliard v. State*, 226 Ga. App. 478, 481-482 (487 SE2d 81) (1997); *Lagana v. State*, 219 Ga. App. 220, 221 (1) (464 SE2d 625) (1995).

But it is also true that

> [t]he grant or refusal of motions for mistrial is largely within the discretion of the trial court, and this discretion will not be interfered with unless manifestly abused; and, where the trial court immediately upon the happening of an irregularity gives cautionary instructions to the jury, this court will not disturb the trial court's judgment refusing a motion for mistrial.

(Citations and punctuation omitted.) *Mosier v. State*, 218 Ga. App. 586, 589-590 (4) (462 SE2d 643) (1995).

Curative instructions were not given in any of these decisions in which this court considered improper testimony going to the credibility of a witness. In *Golden*, we held the testimony was properly excluded by the trial court. In *Hilliard*, *Lagana*, and *Roberson*, the witness testified over objection. In *Buice* and *Putnam*, the defendant never objected, and reversal occurred under the "plain error" rule.

Here, the trial court took corrective measures not only at the time of the alleged error, but also on two occasions during its instructions to the jury. This response was well within the trial court's discretion, and a refusal to grant a mistrial therefore was not error. *Wofford v. State*, 234 Ga. App. 316, 317 (1) (506 SE2d 656) (1998).

Moreover, Godbey interposed his objection before the witness answered the prosecutor's question.

> Absent special circumstances, even when an improper question has been completed and propounded to the witness, when objection is made and the question is struck, it is not an abuse of the court's discretion to deny a motion for mis-

trial founded upon the mere asking of the question. [Cit.]

*Bell v. State*, 129 Ga. App. 783, 785 (4) (201 SE2d 340) (1973) (physical precedent only, but cited with approval in *State v. Shuman*, 161 Ga. App. 304, 306 (3) (287 SE2d 757) (1982)). Here, the question was never answered, and the jury was instructed to disregard its content. The instruction was sufficient to cure any error that might have occurred.

*Judgment affirmed. Pope, P. J., concurs. Eldridge, J., concurs specially.*

ELDRIDGE, Judge, concurring specially.

I concur in judgment only.

1. (a) Godbey waived any issue of notice under Uniform Superior Court Rules 31.1 and 31.3 by electing to make his character an affirmative defense.[1] USCR 31.3 (D); *Nixon v. State*, 234 Ga. App. 797, 799 (507 SE2d 833) (1998); *Miller v. State*, 226 Ga. App. 509, 513 (486 SE2d 911) (1997).[2] Amy Fredell's testimony became admissible regardless of whether any notice had been given at all. USCR 31.3 (D).

(b) Further:

> Child molestation, child abuse, and family violence are uniquely those cases in which the victim or victims are repeatedly and secretly the subject of criminal conduct over long periods of time, and the accused may maintain a public facade of "good character," which can be used to defend against such charges. Thus, when an accused seeks to hide behind the masking evidence of "good character," the requirements of USCR 31.3 are waived, and evidence of prior similar acts of abuse . . . may be used to strip away the mask.

*Miller v. State*, supra at 514.

Under USCR 31.3 (D), similar transaction evidence regarding a defendant's prior, similar sex acts against a child are admissible under rules of evidence to show the defendant's "lustful disposition," and bent of mind. OCGA §§ 24-9-20; 24-2-2; 24-9-68; *Farley v. State*,

---

[1] Here, the record shows that Godbey planned to affirmatively put his character into evidence *after* receiving the State's notice of similar transaction evidence and, following the State's case, called several witnesses to testify specifically as to his character.

[2] Accord *Hawkins v. State*, 230 Ga. App. 627, 629 (497 SE2d 386) (1998); *Kelly v. State*, 197 Ga. App. 811, 815 (7) (a) (399 SE2d 568) (1990); *Sidwell v. State*, 185 Ga. App. 138, 139 (363 SE2d 603) (1987).

265 Ga. 622 (2) (458 SE2d 643) (1995).[3] While such evidence may not be introduced during the State's case-in-chief in *anticipation* of a character defense, when a defendant elects to put his character into evidence, such evidence becomes admissible in rebuttal. To me, under most circumstances, it is "highly probable" that the *order* of the otherwise admissible proof (in the case-in-chief — as opposed to rebuttal) would not contribute to the jury's verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Morrow v. State*, 229 Ga. App. 242, 245 (493 SE2d 616) (1997).

2. Further, Godbey had sufficient notice and opportunity to raise his questions regarding the *admissibility* of the similar transaction prior to trial. Accordingly, the trial court did not abuse its discretion in permitting such evidence. *Bean v. State*, 239 Ga. App. 106, 108 (2) (521 SE2d 19) (1999).

(a) Although the notice incorrectly stated that King's Mountain, North Carolina, was a "county," Godbey was *from* King's Mountain, North Carolina. At the time the similar transaction notice was served on his defense counsel, Godbey had returned to the King's Mountain area to live and had been living there "for awhile" prior to trial. Defense counsel knew this and contacted Godbey in King's Mountain to inform him of the similar transaction notice. See *Parrish v. State*, 237 Ga. App. 274, 279-280 (514 SE2d 458) (1999).

(b) Although the first notice did not contain Fredell's telephone number and address, Fredell was Godbey's next-door neighbor when he previously lived in King's Mountain; she still lived in the same house in King's Mountain; and Godbey had stayed in "contact" with Fredell over the years. Fredell and Godbey's daughter were still good friends. Defense counsel called Fredell and interviewed her prior to the similar transaction hearing. Appellant Godbey, who lived "very close" to Fredell, went to see her and interviewed her himself. Defense counsel knew exactly what Fredell was going to say prior to the hearing on the similar transactions.

(c) While the notice did not contain the exact dates of the prior molestation, neither the State nor Fredell knew the exact dates, and defense counsel talked to Fredell about that matter prior to the similar transaction hearing. In addition, the trial court offered counsel a further opportunity to talk to Fredell prior to trial. See *Bohannon v. State*, 208 Ga. App. 576, 578-579 (431 SE2d 149) (1993).

(d) The defense conceded it was sent a fax transmission regarding the similar transaction ten days prior to trial. The defense used the information contained in that transmission. On this same issue,

---

[3] Accord, e.g., *Condra v. State*, 238 Ga. App. 174 (2) (518 SE2d 186) (1999); *Gibbins v. State*, 229 Ga. App. 896, 899 (4) (495 SE2d 46) (1997); *Wilson v. State*, 220 Ga. App. 487, 489-491 (2) (469 SE2d 516) (1996).

this Court has held the trial court did not abuse its discretion in recognizing a fax as "notice," because the defense *received* actual notice of the similar transaction more timely via fax than by mail: " 'had service of the notice been accomplished by mail, it would have been complete upon mailing notwithstanding the date of receipt, even though actual notice would have been closer to trial.' " *Davidson v. State*, 232 Ga. App. 250, 251 (501 SE2d 510) (1998); *Willis v. State*, 202 Ga. App. 447, 449 (2) (414 SE2d 681) (1992). Accordingly, the purpose for similar transaction notice was served. Id. Notably, counsel did not request a continuance with regard to the similar transaction notice. Instead, defense counsel hoped to use the omissions in the initial notice to preclude Fredell's testimony altogether.

It is well settled that, "USCR 31.1 provides that the notice be given and filed at least ten days before trial unless the time is shortened or lengthened by the judge. We have interpreted this rule as clothing the trial court with discretion which will not be controlled absent abuse." (Citations, punctuation and emphasis omitted.) *Bryant v. State*, 226 Ga. App. 135, 138 (486 SE2d 374) (1997).

Even if the time was shortened in this case, the rule permits it. The purpose of the notice requirement was fulfilled because Godbey had sufficient notice and opportunity to raise his questions regarding the admissibility of Fredell's similar transaction testimony prior to trial. *Bean v. State*, supra. No continuance was requested. Accordingly, there was no abuse of the trial court's discretion in shortening the notice time and permitting Fredell's testimony. *Bryant v. State*, supra.

DECIDED DECEMBER 2, 1999 —
RECONSIDERATION DENIED DECEMBER 16, 1999.

*Davis, Zipperman, Kirschenbaum & Lotito, Nicholas A. Lotito, Paul A. Griffin*, for appellant.

*William T. McBroom III, District Attorney, Randall K. Coggin, Assistant District Attorney*, for appellee.