## A00A0756. GULLEY v. THE STATE.

### (536 SE2d 530)

POPE, Presiding Judge.

Curtis Gulley appeals following a bench trial in which he was convicted of rape, kidnapping with bodily injury, aggravated assault and burglary. We affirm.

In August 1998, the victim hired the moving company where Gulley worked to help her move to her new home. Four men, including Gulley, assisted in the move. The victim was making the move as a result of a divorce, and the court had set specific times for each party to collect his or her belongings. The victim urged the movers to finish removing her belongings before her ex-husband arrived to inventory his property. Due to a misunderstanding regarding travel charges, the victim decided not to tip the movers. Gulley later asked the victim's friend, who was helping with the move, about his tip.

Approximately one week later, the victim arrived home from work to discover a tall, dark-skinned man in her kitchen, with a plastic bag over his head, holding a kitchen knife. As he held the knife to the victim's neck, the man pushed her into the bedroom. He kept telling her that her husband had sent him. The victim testified that the only people who knew where she had moved as a result of her divorce were her mother, her friend, her broker and the four movers. She had not even told her ex-husband her new address.

After the man tore off the victim's shorts and black pantyhose, he raped her. During the rape, the victim was face down on the bed, and the man poked her with the knife a couple of times. The man raped her again before leaving the bedroom. When the victim determined that he was no longer close to the bedroom, she threw herself out of a window and ran to a neighbor for help. As she was fleeing, the victim saw the man coming out of her front door and going toward the Brookhaven Metropolitan Atlanta Rapid Transit Authority station. Her neighbor called 911, and the police arrived. The victim was later taken to a hospital for an examination and the gathering of samples for DNA testing.

The victim determined that her wallet and checkbook had been taken from her purse at the time of the rape. Her wallet held her credit cards, an ATM card and business cards. Previously, a few days after the move, the victim had noticed that her gold panda-shaped ring was missing. After the rape she noticed that she was missing an onyx ring as well.

Forty-two minutes after the neighbor called 911, someone attempted to use the victim's ATM card at a Peachtree Center location. A police detective later made the ride from the Brookhaven MARTA station to the Peachtree Center station and timed it at approximately 33 minutes. Photographs from the ATM camera showed a man attempting to use the victim's card. Both the owner of the moving company and another employee who had assisted in the victim's move identified Gulley as the man in the photos.

Police searched Gulley's home pursuant to a search warrant and discovered several rings, including the victim's gold panda ring. Near that ring the police discovered a MARTA rail-to-bus transfer card with a Peachtree Center stamp on it. They also discovered a pair of black pantyhose. Gulley was subsequently arrested, and a sample of his blood was taken for DNA analysis. At trial, Stephanie Fowler, an expert for the state, testified that Gulley's DNA matched that found in samples of the sperm taken from the victim's rape kit.

1. Gulley first contends that the trial court erred in qualifying Fowler as an expert on DNA analysis. He asserts that Fowler did not have the proper educational qualifications because she lacked a degree in either molecular biology or molecular population genetics.

The decision to qualify a witness as an expert rests in the trial court's discretion:

> "This Court has repeatedly held that it is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular profession as to entitle him to be deemed prima facie an expert. To qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; *his special knowledge may be derived from experience as well as study, and formal education* in the subject is not a requisite for expert status." [Cit.]

(Emphasis supplied.) *Vasquez v. State*, 241 Ga. App. 512, 513 (2) (527 SE2d 235) (1999).

Here, Fowler testified that (1) she received a bachelor of science degree from Wofford College and a masters of science and forensic science from the University of Alabama in Birmingham; (2) she had been employed in the field of forensic sciences and DNA testing for

over five years — three years with the Alabama Department of Forensic Sciences and the remainder at the Georgia Bureau of Investigation crime lab; (3) after starting her job in Alabama, she underwent several months of training in various DNA testing procedures; (4) when she went to work for the GBI, she again underwent several months of training in that department's laboratory; (5) all of her professional experience has been in the field of DNA analysis; (6) she is a member of the Southern Association of Forensic Sciences; and (7) she had qualified as an expert in DNA analysis in three prior cases.

We find this evidence was sufficient to allow the trial court to qualify Fowler as an expert witness in DNA analysis. See *Wingfield v. State*, 229 Ga. App. 75, 83-84 (6) (493 SE2d 235) (1997), overruled in part on other grounds, *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999).

2. Gulley next argues that the trial court erred in admitting the DNA evidence because it was not demonstrated that Fowler performed the tests in an acceptable manner. At trial, however, Gulley did not object to the admission of the DNA evidence on that ground. He objected only to Fowler's explaining a statement she made in her report that "with a reasonable scientific certainty it can be concluded that the DNA obtained from the vaginal cervical swab which matches Curtis Gulley originated from him or his identical twin." The grounds for Gulley's objection at trial were that such testimony improperly went to the ultimate issue in the case, that it was bolstering and that it is not generally accepted in the scientific community that DNA evidence can pinpoint the individual who committed the crime.

"It is well-established that expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves." (Citations and punctuation omitted.) *Godbey v. State*, 241 Ga. App. 529, 532 (2) (526 SE2d 415) (1999). Clearly, the complex issue of DNA matching is one that is appropriate for an expert's conclusion. See generally *Caldwell v. State*, 260 Ga. 278 (393 SE2d 436) (1990); *Beecher v. State*, 240 Ga. App. 457, 458 (2) (523 SE2d 54) (1999).

The testimony at issue merely explained the basis for Fowler's conclusions. Fowler testified that the tests she performed generated a numerical frequency of how often Gulley's DNA profile would be expected to be found in the general population. The computerized test results showed that Gulley's profile would be expected to occur once out of 700 quadrillion profiles in the Caucasian population and once out of 200 quadrillion profiles in the African-American population. As she explained, she uses the term "with a reasonable scientific certainty" only when the frequency shows a rare occurrence, which she defined as an occurrence of once in above ten billion. Thus, this

testimony was necessary to explain the results of Fowler's testing and was neither improper nor bolstering. The trial court, therefore, correctly overruled Gulley's objection. And because Gulley did not object to the admission of the DNA testimony on the ground that the procedures were not properly performed, that issue has not been preserved for appeal: " '[A]n objection on a specific ground or grounds at trial waives any objection to that evidence on other grounds on appeal. Accordingly, all other grounds for objection, other than the specific grounds posed at trial, are not preserved for appeal.' [Cit.]" *Ross v. State*, 231 Ga. App. 793, 801 (14) (499 SE2d 642) (1998). See also *Smith v. State*, 265 Ga. 570, 571-572 (3) (459 SE2d 420) (1995).

3. Gulley also asserts that the evidence at trial was insufficient to support the verdict. Based upon our review of the record, however, we find the evidence was sufficient to support Gulley's conviction. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED JUNE 26, 2000.

*Paola F. Toreselli*, for appellant.
*J. Tom Morgan, District Attorney, Maria Murcier-Ashley, Noah H. Pines, Assistant District Attorneys*, for appellee.