## A04A0054. COLLINS v. THE STATE.
(600 SE2d 802)

BARNES, Judge.

Sylvester Collins was convicted in Athens-Clarke County Superior Court of multiple offenses, including three counts of rape, two counts of aggravated assault, and three counts of kidnapping with bodily injury. He was sentenced to multiple consecutive life sentences. He argues on appeal that the trial court erred in (1) denying his motion to suppress; (2) denying his motion to sever; (3) admitting statements he made to the police; (4) allowing expert testimony on the frequency of DNA profiles in the population; and (5) failing to merge the kidnapping charges with the rape charges. For the reasons that follow, we affirm.

Collins was convicted of crimes resulting from incidents occurring in the early morning hours in July, August, and October 2000, during which he kidnapped, beat, and raped three women who worked in the food service industry in downtown Athens. In November 2000, Collins got out of his car at a red light and approached a car driven by a fourth woman, pointing a handgun at her. She ducked down and "stomped it," as she said, in reverse until she could turn the car around. A high-speed chase ensued, and the victim drove to a gas station and asked the clerk to call 911 and report the crime. She spoke with the police, who put out an all-points bulletin for a black Camaro or Firebird with one headlight out. A patrol officer spotted the car nearby, stopped and arrested Collins, and took him to the gas station where the victim identified him. DNA extracted from Collins's blood matched the DNA extracted from semen collected from the victims of the three rapes.

1. Collins contends that the trial court erred in denying his motion to suppress evidence, including blood from which DNA was extracted, obtained as a result of faulty search warrants. Collins claims that the supporting affidavits misrepresented one victim's identification of him in a photo lineup and omitted reference to another victim's failure to identify him in a photo lineup.

In its order denying Collins' motion to suppress the evidence, the trial court thoroughly reviewed the evidence presented at the motions hearing and the affidavits supporting the search warrant. The court noted that the affidavit states that, in reviewing the photo lineup, one victim said that Collins looked "just like" her attacker and that she "indicated 'this is the guy.' " Collins argues that the affidavit also should have pointed out that the victim rated her confidence in her identification as a "seven or eight out of ten," and that "she wanted to know how tall he was and wanted to hear him speak to be absolutely sure." Collins further argues that the affidavit should

have noted that this victim had identified another man in a previous lineup as a "five" on a scale of one to ten as being "similar" to her attacker. Additionally, another victim failed to identify Collins at all as her attacker.

In determining whether to issue a search warrant,

[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. [*Illinois v. Gates*, 462 U. S. 213, 238 (103 SC 2317, 76 LE2d 527) (1983).]

(Punctuation omitted.) *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). In this case, Collins has not argued that the detective supplying the affidavit falsified information, only that his information was incomplete, and the trial court found no evidence of misconduct on the detective's part.

We will not disturb the magistrate's judgment on the credibility of the information and the informant unless that judgment is clearly erroneous. *Fortson v. State*, 277 Ga. 164, 167 (3) (587 SE2d 39) (2003). It is clear from reading the affidavit that only one rape victim identified Collins. Additionally, the affidavit notes that the first rape victim said her assailant was driving a "dark colored 90's black 'sporty car' "; that one rape victim was threatened with a pistol that looked bigger than the detective's automatic; and that all three rape victims described their assailant as a close-shaven, short haired black male with a stocky build, between 5'4" and 5'10." Further, the affidavit noted, Collins was arrested driving a black Camaro that matched the first rape victim's description of the car, in which the police found an automatic pistol replica. He is 5'7" with close-cropped hair and a stocky build. Prints taken from Collins at his booking were insufficient for comparison but had whorl patterns, as did latent prints from the first rape scene. Under the totality of the circumstances, the State properly obtained its search warrants in this case and it was not error for the trial court to admit the evidence obtained in the execution of those warrants.

2. Collins contends that the trial court erred in denying his motion to sever the aggravated assault count against the fourth victim from the counts involving the first three victims, arguing that this count followed no similar pattern. A defendant has a right to

severance if the "offenses have been joined solely on the ground that they are of the same or similar character," *Dingler v. State*, 233 Ga. 462, 464 (211 SE2d 752) (1975). Further, severance may lie when offenses are not joined solely because they are of the same or similar character, if the trial court determines in its discretion that the trier of fact would not be able to fairly and intelligently judge each offense. *Stewart v. State*, 277 Ga. 138, 139 (587 SE2d 602) (2003).

The trial court in this case found that the final aggravated assault count was not included solely because it was an assault against a woman, but because of the manner in which it was conducted. "Simply because that victim did not remain at the scene to determine what was wanted of her is no reason for the Court to believe that the acts of November 15 were not part of a similar bent of mind, scheme, or course of conduct evidenced in the other three sexual assaults." We conclude that the trial court did not abuse its discretion in denying Collins' motion to sever.

3. In his third enumeration of error, Collins asserts that the trial court erred in admitting statements he made when interrogated by the arresting officer. Collins contends that the officer, who recited the *Miranda* warnings by memory, failed to inform him that he had a right to appointed counsel if he could not afford one.

The morning after Collins' arrest, a detective with the Athens-Clarke County Police Department called the lieutenant who manages the University of Georgia Police Department's criminal investigations unit and told him they had a suspect who resembled the composite sketches of the man who had attacked several women. Before the lieutenant interviewed Collins at the jail that morning, he explained his *Miranda* rights to him from memory. The session was not recorded. At the *Jackson-Denno* hearing, the lieutenant said, "I told him he had the right to remain silent, anything he said could be used against him in a court of law and that he had a right to have an attorney present with him while he was being questioned, and I told him he, in fact, didn't have to talk with me at all. He said that he understood that and agreed to continue to talk with me."

The next day, the lieutenant returned to assist another officer who was there to execute a search warrant for Collins' prints, when Collins stopped him and "immediately began telling me that he wanted to talk to me about those three white girls. And I stopped him and asked him if he remembered his *Miranda* rights from the previous day and told him he didn't have to talk with me, and he continued to interrupt me and seemed, seemed to desperately want to talk about it." The officers took Collins into a holding cell where the lieutenant "tried to remind him of his *Miranda* rights again and he immediately began talking real fast about these three white girls that he had sex with." After Collins talked to the officers for a period of

time, he agreed to complete a written statement. The detective again gave Collins his *Miranda* warnings, and Collins signed a form that outlined those rights, then wrote out his statement.

During the *Jackson-Denno* hearing, the lieutenant testified further about the content of the *Miranda* warning he gave Collins during these two interviews. In response to the court's direction to tell the court what he told Collins, the lieutenant testified that he informed Collins that if he could not afford an attorney one would be appointed by the courts for him, along with the other *Miranda* rights. Finally, when the lieutenant testified at trial, he had to start over twice before he could recite the rights all the way through.

Collins argues that, given the lieutenant's concession that he recited the warning from memory and the "demonstrated flaws" in his memory, the trial court clearly erred in finding that the State met its burden of proving that Collins made his statement freely and voluntarily. We will affirm a trial court's determination that a defendant's statement was made freely and voluntarily unless that determination is clearly erroneous. *McEver v. State*, 258 Ga. 768, 769 (5) (373 SE2d 624) (1988). In this case, the trial court's ruling on this issue was not clearly erroneous.

4. Collins asserts that the trial court erred in admitting a statement he made when he was arrested. The trial court ruled inadmissible Collins' response to one of the officer's question about whether he had been at a particular gas station earlier, because Collins had not been *Mirandized* at that point, but at trial allowed testimony that Collins volunteered that he had a BB gun in his car and that he had not pointed it at anyone. The officer responded, "Nobody said you did," and Collins replied, "Well, isn't that why y'all . . . stopped me?" The officer again said, "Well, nobody said that," and Collins said, "Well, why did y'all stop me?"

"The State is not required to show that *Miranda* warnings were given before introducing evidence of a custodial statement which was not obtained through interrogation but was volunteered by the suspect." (Citation omitted.) *Kennedy v. State*, 246 Ga. App. 236, 237 (2) (540 SE2d 229) (2000). Collins admits that he volunteered the statement, but argues that the statement was tainted by the earlier, impermissible question and should not have been admitted because, even though it was exculpatory, the State construed it as an admission of wrongdoing. The United States Supreme Court has held that interrogation is not limited to actual questioning of a suspect but includes its "functional equivalent." *Rhode Island v. Innis*, 446 U. S. 291, 300-301 (II) (A) (100 SC 1682, 64 LE2d 297) (1980). The "functional equivalent" of express interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably

likely to elicit an incriminating response from the suspect." (Footnotes omitted.) Id. at 301. In this case, we cannot see that the arresting officers used the functional equivalent of questioning to elicit an incriminating response from Collins, or that the spontaneous statement was impermissibly tainted by the officer's earlier question. Thus, the trial court did not err in allowing the statement into evidence.

5. Collins argues that the trial court erred in allowing a witness from the state crime lab to testify regarding the frequency in the population of the DNA profile obtained from the three rape victims. During the examination of her credentials and expertise, the witness testified that, in addition to her scientific background, she understood the basis for the computer program that generates the statistical frequencies about which she testifies. Collins objected to the witness testifying about the statistical frequencies because she had not performed the calculations from which her conclusions were drawn and had not personally tested the 300 or so individuals whose results were used to extrapolate larger population databases. The trial court qualified the witness as an expert in forensic serology and DNA analysis, and the expert testified that the DNA from the assailant came from Collins or his identical twin. She further testified that the statistical probability of someone having that DNA profile was one in 90 quintillion African-Americans, quintillion being a one followed by 19 zeros.

We will not disturb a trial court's ruling that a witness is qualified to testify as an expert absent an abuse of discretion.

> This Court has repeatedly held that it is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular profession as to entitle him to be deemed prima facie an expert. To qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status.

(Citation and punctuation omitted.) *Gulley v. State*, 244 Ga. App. 629, 630 (1) (536 SE2d 530) (2000).

Here, the expert testified she had a Bachelor of Science in biology, underwent six months of training in DNA and serology, attended national seminars and additional workshops and classes, assisted in training other scientists in forensic serology and DNA analysis, and qualified as an expert twenty-five times in Georgia courts. She testified that her area of expertise includes generating statistical frequencies and explained how those frequencies are generated. The

expert described the testing that formed the basis for the computer program that the crime lab uses to generate the numbers. While she does not personally perform the mathematical calculations used to generate the statistics, which are done by the computer program, she is capable of doing so.

"The expert's description of the compilation of the data base supports the trial court's decision to allow the expert to testify as to statistics developed from that base. The appellant possessed the opportunity to question the compilation of the data base through cross-examination." *Evans v. State*, 256 Ga. 10, 12 (2) (a) (342 SE2d 684) (1986) (expert testimony allowed regarding percentages of state population possessing certain blood types and enzymes). We have previously upheld the admission of similar testimony, and conclude that the trial court did not err in allowing it in this case. *Thrasher v. State*, 261 Ga. App. 650, 651-652 (2) (583 SE2d 504) (2003); *Gulley v. State*, supra, 244 Ga. App. at 630.

6. Finally, Collins contends that the trial court should have merged two of the kidnapping with bodily injury convictions with two of the rape convictions as a matter of fact, because the kidnapping injuries constituted the force element of the rapes. OCGA § 16-1-7 (a) provides:

> When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

Since the two crimes do not fit within the second portion of the test, they will merge if one is included in the other.

> One crime is included in another when: [1] it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged, or [2] it differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission. OCGA § 16-1-6.

(Citation and punctuation omitted.) *Olsen v. State*, 191 Ga. App. 763, 764 (1) (382 SE2d 715) (1989). While the crimes of kidnapping with bodily injury and rape may merge in fact, *Thornton v. State*, 144 Ga. App. 595, 597 (2) (241 SE2d 478) (1978), in this case they did not do

so. The force required as an element of rape can be mental as well as physical. "Consent induced by fear is not the free consent required to prevent the act from constituting rape, but such consent is the mere product of force within the meaning of the statute." (Footnote omitted.) *Roberts v. State*, 242 Ga. App. 621, 623 (1) (a) (530 SE2d 535) (2000). In addition to striking both victims, Collins threatened to kill them if they did not have sex with him. Because the proof establishing the rape did not "use up" the proof establishing the kidnapping with injury, the crimes did not merge.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED JUNE 14, 2004.

*Elizabeth M. Grant*, for appellant.

*Kenneth W. Mauldin, District Attorney, Edward H. Brumby, Jr., Assistant District Attorney*, for appellee.