### A92A0526. COCHRAN v. THE STATE.
### A92A0667. HANDTE v. THE STATE.
(420 SE2d 32)

SOGNIER, Chief Judge.

James Don Cochran and Charles Handte, Jr. were convicted of theft by conversion. OCGA § 16-8-4. We have consolidated their appeals from the denials of their motions for new trial in this opinion.

1. Both appellants enumerate the general grounds. "On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant[s] no longer [enjoy] a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. [Cit.]" *Feagin v. State,* 198 Ga. App. 460-461 (1) (402 SE2d 80) (1991). Applying these principles to our review of the transcript, the evidence at trial revealed that in November 1985 appellant Cochran

purchased 200 acres of land from Rachel Thomas. Ms. Thomas and her son, Karter Thomas, who negotiated the sale, both testified that the property was sold for $145,000 ($725 an acre) and that no other sums were paid for the property. Other testimony and documentary evidence established, however, that the warranty deed and real estate transfer tax declaration listed the purchase price as $240,000 ($1,200 an acre) and the purchasers as appellant Cochran; appellant Handte's wife, Bonnie Bigelow; a friend of appellants, David Premo; and the victims of the conversion, Temple Hill and Lynda Black Rea.

Rea testified that she decided to participate in the offer made by Handte, who worked with Cochran in an Ellijay realty business, to join him and Cochran in the purchase of the Thomas property based on her understanding from representations made to her by Handte that the purchase price of the property was $240,000 and that she was tendering $60,000 to buy a 25 percent interest in the property. She testified that in previous transactions in which she or her husband had participated with appellants and various other individuals, the parties had always invested an equal amount per acre for their proportionate share of the property; in the one exception to this course of conduct, it had been fully disclosed to her that Cochran had purchased the property at one price and, in a second closing, resold the property to her husband and other buyers for a higher amount.

Rea testified that as part of the standard arrangement in these transactions, she, as the attorney in the group, would handle certain aspects of the legal documentation involved. Handte asked her to prepare the closing documents for the Thomas sale. Rea testified that she prepared the documents based on the figures and percentages given to her by Handte; certain of those documents were admitted into evidence (e.g., the closing statement, disbursement sheet, warranty deed) and reflect the purchasers of the Thomas property as: Cochran and Handte, through his wife, contributing $45,000 each for their respective 18.75 percent shares of the property, Premo contributing $30,000 for a 12.50 percent share and Temple Hill and Rea each contributing $60,000 for their respective 25 percent interests in the property (hereinafter referred to collectively as "the investors"). Rea testified that she was not shown the sales contract; that she did not know at the time of the transaction that the property was being purchased from Thomas by Cochran alone for $145,000, rather than by the investors for $240,000; and that she was not aware at that time that appellants were not paying anything for their interest in the property.

Rea testified that because she was not informed that there was a closing deadline on the property, she accepted an invitation, issued approximately a week before that deadline, to accompany Handte and his wife and two other couples on a trip to Tennessee. She testified

that when Handte informed her a day or two before the trip that the closing had to take place after their departure, he was "adamant" that she not cancel her trip plans in order to be present at the closing, and persuaded her instead to prepare detailed documents. The evidence established that Cochran handled the closing while the Reas and the Handtes were vacationing.

As noted above, the warranty deed and the real estate transfer tax declaration executed at that closing both reflect that the investors were the purchasers of the property. The transfer tax declaration also reflects that the purchase price was $240,000, not $145,000. An expert in handwriting testified that Rachel Thomas's signature on the transfer tax declaration had been forged. Ms. Thomas testified that she did not sign any document at closing that reflected that the purchase price for her property was $240,000.

Temple Hill, the other investor who contributed $60,000 to the purchase, testified that Handte had represented to him that he was purchasing a 25 percent interest in the property at $1,200 an acre. He also testified that Handte assured him on several occasions that all the investors were paying $1,200 an acre, and that he, Handte, was personally investing $45,000. Hill acknowledged that he would not have participated in the deal had he known that he and Rea were contributing over 80 percent of the purchase price in exchange for only 50 percent ownership in the property. Hill testified he became suspicious of the transaction in late 1987 because of subsequent unsavory business transactions he had with Handte. After Hill contacted Karter Thomas and obtained a copy of the sales contract, which reflected that Cochran had purchased the property for $145,000, Hill confronted Cochran. Hill testified that Cochran stated that he (Cochran) had paid $45,000 for his share in the purchase and that as Cochran read over Hill's copy of the sales contract, Cochran's hands "kept getting shakier." Hill also testified that when he talked with Handte, Handte represented to him that the $95,000 difference between the sales contract price ($145,000) and the closing price ($240,000) was paid to the Thomases "under the table."

OCGA § 16-8-4 (a) provides in pertinent part that "[a] person commits the offense of theft by conversion when, having lawfully obtained funds . . . of another . . . under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation." Appellants argue that their convictions under this statute must be reversed because there was no evidence of conversion, relying on the fact that both Rea and Hill acknowledged that they did, indeed, receive 25 percent of the Thomas property for their $60,000, as well as on the uncontroverted evidence that all of the funds tendered

by Rea and Hill were used to purchase the Thomas property. However, the jury was authorized to find that appellants converted Rea's and Hill's money by using those funds to purchase most of appellants' share in the property because the evidence showed that the victims' money, which provided approximately 83 percent of the purchase price, paid not only for the victims' 50 percent share of the property but also for 33 percent of appellants' 37.5 percent share of the property. Because the evidence was uncontroverted that Rea and Hill provided appellants with their funds so that appellants could purchase only the victims' own shares of the property and with no intent to enable appellants to purchase the property on appellants' behalf, to which purpose a substantial amount of the victims' money was applied, we do not agree with appellants that there was no evidence of conversion. See *Mason v. State*, 180 Ga. App. 235-237 (348 SE2d 754) (1986). Compare *Tchorz v. State*, 197 Ga. App. 185 (397 SE2d 619) (1990) (no evidence to controvert defendant's testimony that he properly applied money given him by alleged victims to the purpose for which it was intended).

We find no merit in appellants' argument that the evidence established the crime of theft by deception, OCGA § 16-8-3, rather than theft by conversion. Contrary to appellants' argument, the criminal act that occurred in the transaction sub judice was not the obtaining of the money from the victims since, as appellants stressed in their other argument, the victims got exactly what was represented to them and appellants kept none of the money for themselves. Instead, the crime occurred when appellants, having obtained the funds for a "specified application," used the victims' money to purchase shares in the property for themselves, thereby converting the funds from their intended and agreed-upon application to appellants' own use. See *Mason*, supra, 237 (2).

Appellant Handte also contends that the evidence was insufficient to support his conviction because all the documentary evidence reflects the property was titled in his wife's name, not his. OCGA § 16-8-4 (a) does not require the converted funds to be titled in the accused's name; it merely sets forth that the funds or property be knowingly converted to the accused's "own use." Given the testimony at trial that Handte routinely purchased property under his wife's name, the jury was authorized to conclude that the conversion which Handte was instrumental in performing was for Handte's use. Furthermore, as the State correctly notes in its brief, the evidence of Handte's conduct before, during, and after the conversion was sufficient to enable the jury to find beyond a reasonable doubt that Handte was a party to Cochran's conversion of the victims' funds so as to authorize Handte's conviction for the conversion of those funds under OCGA § 16-2-20. See generally *In the Interest of J. S. S.*, 168

Ga. App. 340-341 (2) (308 SE2d 855) (1983).

The evidence adduced at trial was sufficient to enable a rational trier of fact to find appellants guilty beyond a reasonable doubt of the offense of theft by conversion under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Bartel v. State*, 202 Ga. App. 458, 460 (5) (414 SE2d 689) (1991).

2. It is not necessary to detail the reasons why the evidence established the lack of any attorney-client relationship between Rea and Handte, since Handte's objection to the admission of her testimony on the basis that it violated his privilege under OCGA § 24-9-24 was not raised below. "Objections not raised at trial cannot be raised for the first time on appeal, as they are deemed waived." (Citations and punctuation omitted.) *Hight v. State*, 195 Ga. App. 727, 730 (6) (394 SE2d 636) (1990).

3. We have reviewed Handte's remaining enumeration of error and find it to be without merit.

*Judgments affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JUNE 1, 1992 —
RECONSIDERATIONS DENIED JUNE 12, 1992 AND JUNE 23, 1992 —

*Weaver & Weaver, George W. Weaver, Frank J. Petrella*, for appellants.

*Roger Queen, District Attorney*, for appellee.