A05A1872. MATTHIESSEN v. THE STATE.
(625 SE2d 422)

PHIPPS, Judge.

A jury found James Matthiessen guilty of ten counts of theft by taking in a scheme to persuade Cobb County residents to buy tire hauling containers. He appeals, arguing that the trial court erred by denying his motions for directed verdicts of acquittal. Because the court did not err, we affirm.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. A motion for a directed verdict in a criminal case should only be granted when there is *no conflict* in the evidence and the evidence demands a verdict of acquittal as a matter of law. Moreover, on appeal the evidence must be viewed in the light most favorable to the verdict, [Matthiessen] no longer enjoys the presumption of innocence, and the appellate court determines the sufficiency, not the weight of the evidence, and does not judge the credibility of the witnesses.[1]

So viewed, the record shows that Matthiessen and his associate, Mark Hobart, made sales presentations to a number of people, including some Cobb County residents, touting a revolutionary process for recycling tires that another business associate, James Hunt, allegedly had developed. Matthiessen and Hobart explained that Matthiessen's company, BGI, Inc., would collect and transport used tires to a recycling plant that Hunt was building in Ringgold. Matthiessen and Hobart solicited money from the viewers of the presentations to buy dumpster-like containers to haul the tires to the plant. Based on their representations, at least ten Cobb County residents entered into contracts with BGI under which they paid $10,000 or $12,500 apiece for one or more containers, which they would immediately lease back to BGI in exchange for scheduled lease payments. The buyers testified that Matthiessen promised to use their money to

---

[1] *Fitzpatrick v. State*, 271 Ga. App. 804, 805 (611 SE2d 95) (2005) (citation omitted; emphasis in original).

acquire containers and that they never authorized him to give it to any entity other than BGI. The contracts did not specify any contingencies or conditions precedent that needed to occur before BGI acquired the containers.

Despite entering into contracts to sell 22 containers, Matthiessen never acquired any containers for the Cobb County buyers. Instead, he gave the bulk of their money to Hunt. In addition, BGI made only a few of the promised lease payments, using other buyers' money, and some buyers received no payments at all. With regard to the recycling facility, Hunt acquired commercial property in Ringgold, but he never installed the promised revolutionary equipment, and the facility never became operational.

Matthiessen blamed Hunt for the loss of the buyers' money. He claimed that he had relied on Hunt's misrepresentations that the plant would soon be operational. According to Matthiessen, "we all got duped." However, Matthiessen refused to join the other buyers in seeking justice against Hunt. The state's theory was that Matthiessen and Hunt worked together to scam the buyers. To support this theory, the state presented evidence that in the early 1990s, Matthiessen and another associate sold people the right to use a cellular telephone network, but "when it came time to finally produce the towers and do it, the engineers could not get the towers to work."

For each of the Cobb County buyers, Matthiessen was charged with one count of theft by deception and one count of theft by taking.[2] He was found not guilty of theft by deception, but guilty of all theft by taking charges.

1. Matthiessen argues that the evidence showed he was guilty only of civil breach of contract, not theft. "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."[3] "[W]hen the alleged taking occurs when a defendant fails to perform under a contract with the victim, the 'real issue' is whether the defendant accepted or retained the victim's money with no intention to satisfy his obligations under the contract."[4]

The evidence showed that Matthiessen promised — orally and in writing — to use the buyers' money to acquire tire hauling containers, but instead used it for other purposes that the buyers had not

---

[2] The state later withdrew one of the theft by deception charges, and the trial court directed a verdict of acquittal on another.

[3] OCGA § 16-8-2.

[4] *Smith v. State*, 265 Ga. App. 57, 59 (1) (592 SE2d 871) (2004) (citation omitted); see also *Tukes v. State*, 250 Ga. App. 117, 121 (1) (b) (i) (550 SE2d 678) (2001).

authorized. In addition, there was evidence that Matthiessen had persuaded people to invest in a different invention years before that never panned out. Whether Matthiessen intended to fulfill his contractual obligations when he took the buyers' money was a question for the jury.[5] Although Matthiessen testified that the buyers had implicitly authorized him to use their money for other purposes until Hunt's plant began functioning, the jury was not required to believe his testimony.[6] Based on the trial record as a whole, the jury was entitled to infer that Matthiessen acted with criminal intent and to find him guilty of theft by taking.[7]

2. Matthiessen argues that his conviction on four of the theft counts must be reversed because those counts related to buyers who dealt only with his associate, Hobart, and not with him. With respect to one of the counts, the evidence showed that the buyer did, in fact, meet directly with Matthiessen, who urged him to sign the container purchase and leaseback agreements. With respect to the other three counts, the evidence was sufficient to support Matthiessen's convictions under a party-to-the-crime theory.[8] Hobart was president of BGI, and he told prospective container buyers that he was Matthiessen's partner. He gave between ten and fifty presentations to solicit new buyers, using the same format as Matthiessen, and he transferred any money he received into an account controlled by Matthiessen. Under these circumstances, the jury was authorized to find Matthiessen guilty as a party to the crime of theft by taking.[9]

3. Matthiessen claims that his conviction under one of the counts must be reversed because the buyer did not testify. The buyer was 92 years old and unable to testify due to his age. His grandson, however, testified that he had attended one of Matthiessen's presentations with his grandfather, who had bought a container. He identified for the jury his grandfather's sales contract, lease agreement, and check for the container. This evidence was not inadmissible hearsay, and it was sufficient to support Matthiessen's conviction on the challenged count.

4. Finally, Matthiessen argues that having found him not guilty of theft by deception, the jury was bound to find him not guilty of theft by taking, as well. Matthiessen cites no authority for this proposition,

---

[5] See *Smith*, supra; *Tukes*, supra.

[6] See *Leary v. State*, 256 Ga. App. 639, 640 (1) (569 SE2d 593) (2002).

[7] See id.; *Rasch v. State*, 260 Ga. App. 379, 388-389 (3) (b) (579 SE2d 817) (2003) (affirming theft by taking convictions in connection with Ponzi scheme).

[8] See OCGA § 16-2-20.

[9] See *Cochran v. State*, 204 Ga. App. 602, 605 (1) (420 SE2d 32) (1992) (defendant could be found guilty of theft by conversion on a party-to-the-crime theory).

and we find none. To the extent that Matthiessen claims that the verdicts were inconsistent, "this State has abolished the inconsistent verdict rule."[10]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 21, 2005 —
RECONSIDERATION DENIED DECEMBER 15, 2005 — 

*David C. Butler, Robert G. Rubin*, for appellant.
*Patrick H. Head, District Attorney, Timothy B. Lumpkin, Dana J. Norman, Assistant District Attorneys*, for appellee.

---

[10] *Huntley v. State*, 271 Ga. 227, 230 (3) (518 SE2d 890) (1999) (footnote omitted).
[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).