## A09A1438. SHEPPARD v. THE STATE.
(686 SE2d 295)

DOYLE, Judge.

Duaine Ralph Sheppard was convicted of one count of felony theft by taking,[1] and he was sentenced to serve ten years, five in confinement.[2] Following the denial of his motion for new trial, Sheppard appeals, arguing that the trial court erred by: (1) admitting evidence regarding his arrest; (2) admitting a videotape of the theft at issue without a proper foundation; (3) sentencing him for a felony under OCGA § 16-8-12 (a) (1); and (4) sentencing him as a recidivist. He also challenges the sufficiency of the evidence. We affirm, for reasons that follow.

> On appeal from a criminal conviction following a bench trial, [Sheppard] no longer enjoys a presumption of innocence, and we view the evidence in a light favorable to the trial court's finding of guilt, giving due regard to the trial court's opportunity to judge witness credibility. This Court does not weigh the evidence or determine the credibility of witnesses. Rather, we determine only if there is enough evidence from which a rational trier of fact could have found the accused guilty beyond a reasonable doubt.[3]

"The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction."[4]

So viewed, the record shows that on August 24, 2005, William Fripp, an employee of Advanced Door, was repairing an external door at the U. S. Attorney's Office in Savannah when he accidentally locked himself out of the building. At approximately 2:10 p.m., Fripp

---

[1] OCGA §§ 16-8-2; 16-8-12 (a) (1).

[2] The August 12, 2006 sentencing order indicated that Sheppard would receive credit for time served since September 1, 2005. He was subsequently paroled, effective December 11, 2007.

[3] (Punctuation and footnotes omitted.) Yglesia v. State, 288 Ga. App. 217 (653 SE2d 823) (2007).

[4] (Punctuation omitted.) Williams v. State, 246 Ga. App. 347 (540 SE2d 305) (2000).

went into the building at another entrance, leaving a suitcase containing his tools outside the door, and when he returned, he discovered that the suitcase and tools were gone. He immediately reported the theft to the security guard inside the building and called the police. The same day, Fripp went to pawn shops in the area, described the stolen items, and asked the employees to call him if anyone attempted to pawn the items. Fripp also called his supervisor, who instructed him to complete the job immediately, so Fripp bought replacement tools, spending more than $2,000.

Less than two hours after the theft, Stephen Jung, an employee of the Welsh Pawn Shop, called Fripp and advised him that between approximately 3:00 to 3:30 p.m., a man brought in a suitcase with tools matching Fripp's description. Jung advised the man that he would not accept the items because they had been stolen, and the man ran from the shop, dropping his identification card in the process. The identification card belonged to William Smith, who had pawned items at the shop on three previous occasions. A police officer retrieved the items from the pawn shop and showed them to Fripp, who indicated that the suitcase was damaged and that two grip pliers and a grinder were missing; the items were then returned to Fripp.

Corporal George Gundich of the Savannah Chatham Metropolitan Police Department reviewed the police report in this case the following day as part of his job duties on the Downtown Special Operations Unit. Gundich was familiar with Smith based on previous "run-ins with [him] for various other thefts . . . many items we found that [Smith] ha[d] been pawning off . . . at other pawn shops," and he recognized Smith's name when he read the police report. According to Gundich, he frequently saw Smith and Sheppard together on at least a dozen occasions before the crime at issue here. Gundich reviewed the footage from a surveillance camera that depicted the theft in this case, which showed Fripp working and then leaving the area, two men on bicycles entering the area at approximately 2:14 p.m., and one of the men taking the suitcase while the other waited nearby.[5] Based on his observation of the perpetrators' "mannerisms, the way they walked, the bikes they were on, the way they were dressed, their hair, [and their] facial features," Gundich identified them as Smith and Sheppard, noting that he was "very familiar with watching both of them . . . [a]fter so many years of working on [the Downtown Special Operations Unit]."

On September 1, 2005, Gundich returned to the area of the theft, and he saw Smith and Sheppard. Smith was riding the same bicycle

---

[5] The jury viewed the tape at trial, and it was included in the record on appeal.

that he was riding in the videotape on the day of the theft, and Sheppard was wearing the same clothes that he wore on the videotape, including a red hat with a gold bill. Gundich and another officer decided to watch the two men for awhile, and they observed Smith and Sheppard "acting a little peculiar." According to Gundich,

> [o]ne would take a turn on the bike while the other would stand and look out on one side of the street. They would ride across the street, go along Congress [Street], come back. Meanwhile, the one that was walking would go by and inspect several bicycles that were locked up on either poles or other light posts, look at the locks[,] and at some points one would stay on one side of Broughton Street — on the north side — while the other was on the south.

> They would make hand signals to each other and gestures[,] and they would meet up again one block down on every corner, talk again[,] and the other would take the bike. They'd separate again[,] and this went on for several blocks. . . .

Because the area was getting crowded, Gundich called for backup, and officers in a marked police car stopped Smith and Sheppard. The police inspected the bicycle, which Sheppard had, and discovered that the serial number had been scratched off.[6] When Gundich asked Sheppard if he could provide proof of his ownership of the bicycle, Sheppard responded that he had purchased it from some unknown person. Gundich then executed a pat-down of Sheppard, and he recovered three pocket knives and a pair of bolt cutters. At that point, the officers arrested both men, charging Sheppard with theft of lost or mislaid property (the bicycle) and possession of tools used in the commission of a crime. Sheppard was also charged with felony theft by taking in connection with Fripp's suitcase and tools.

Following the guilty verdict, Sheppard filed a motion for new trial, which the trial court denied. This appeal followed.

1. Sheppard contends that the trial court erred by admitting evidence and allowing testimony regarding his September 1, 2005 arrest for the bicycle theft and possession of tools for the commission of a crime, arguing that such evidence was irrelevant and impermissibly placed his character at issue. A motion in limine was denied on

---

[6] Gundich subsequently tracked down the owner of the bicycle, who indicated that it had been stolen.

this issue prior to trial, and the bolt cutters and Corporal Gundich's testimony regarding the arrest were admitted over Sheppard's objection.

> As a general rule, evidence of the circumstances surrounding an arrest is admissible if it is relevant to the crimes charged. Even where the evidence involves other crimes for which the defendant has not been charged, such evidence may be admissible where relevant to the crime of which the defendant is accused. The decision to admit this evidence lies within the sound discretion of the trial court, and will not be disturbed on appeal absent a clear abuse of discretion.[7]

Here, on September 1, 2005 (approximately one week after the theft), Sheppard was found with Smith in the same area where Fripp's tools were stolen. Sheppard was wearing the same clothing that he had worn in the surveillance video of the theft, and he was riding the bicycle that Smith rode in the video. Immediately before Sheppard's arrest, Smith (who was also in the surveillance video) and Sheppard were walking up and down the street, making hand signals to each other and inspecting locked bicycles. The bicycle Sheppard was riding was stolen, and he was in possession of bolt cutters, a tool commonly used in the commission of thefts. Thus, we conclude that the evidence regarding the events of September 1, 2005, which was consistent with stealing property, was relevant to Sheppard's alleged theft of Fripp's suitcase and tools.[8] Therefore, the trial court did not err in admitting this evidence.

2. Next, Sheppard alleges that the trial court erred by admitting the videotape of the footage from the surveillance cameras depicting the theft because the State failed to provide a proper foundation under OCGA § 24-4-48 (c). This enumeration provides no basis for reversal.

"Trial courts have broad discretion to determine whether a sufficient foundation has been provided for the introduction of

---

[7] (Citations and punctuation omitted.) *Scott v. State*, 277 Ga. App. 126, 127-128 (1) (625 SE2d 526) (2006).

[8] See *Benford v. State*, 272 Ga. 348, 349-350 (3) (528 SE2d 795) (2000) (evidence that the defendant possessed crack cocaine at the time of his arrest for murder was admissible at trial because the evidence showed that the defendant and the victim smoked crack cocaine prior to the murder); *Scott*, 277 Ga. App. at 128 (1) (evidence that the defendant was in possession of digital scales, marijuana, cocaine, and a large amount of cash at the time of his arrest was admissible at trial for trafficking in cocaine); *Gresham v. State*, 255 Ga. App. 625, 630 (4) (566 SE2d 380) (2002) (evidence that defendant was in possession of a knife at the time of his arrest was relevant and admissible at trial for the aggravated assault of a woman who testified that the defendant had threatened her with violence).

evidence. We will not reverse the trial court's ruling in this regard unless there has been an abuse of that discretion."[9] "The weight to be given evidence, once admitted, is for the jury."[10]

Pursuant to OCGA § 24-4-48 (c), "subject to any other valid objection," videotapes

> produced at a time when the device producing the items was not being operated by an individual person or was not under the personal control or in the presence of an individual operator shall be admissible in evidence when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered, provided that prior to the admission of such evidence the date and time of such . . . videotape recording shall be contained on such evidence and such date and time shall be shown to have been made contemporaneously with the events depicted in the . . . videotape.

Sheppard does not argue that there was insufficient evidence to establish that the recording device was under the personal control or in the presence of an individual operator. Instead, he alleges that the State failed to provide the requisite foundation for admission of the tape under OCGA § 24-4-48 (c) because Gundich, "who had not made the tape or operated the camera and who had only seen the tape on the day after the theft . . . , was allowed to testify over [Sheppard's] objection that the tape was made contemporaneously."

At trial, Officer Rachel Tolbert testified that she responded to the scene of the theft at approximately 2:39 p.m., and Fripp advised her that his suitcase containing his tools had been stolen at approximately 2:10 p.m. Tolbert spoke with the security officer at the U. S. Attorney's Office, but the security officer was unable to view the surveillance footage at that time. Tolbert returned to the U. S. Attorney's Office the same day at approximately 5:30 p.m. and reviewed the surveillance tape, which was date and time stamped and showed two men taking Fripp's suitcase at approximately 2:14 p.m. Fripp, who viewed the tape the day following the theft and on the day of the trial, testified that although he had no personal knowledge of what happened after he left the scene to enter the

---

[9] (Citations and punctuation omitted.) *Dae v. Patterson*, 295 Ga. App. 818, 820 (2) (673 SE2d 306) (2009).

[10] (Punctuation omitted.) *Ross v. State*, 262 Ga. App. 323, 328 (4) (585 SE2d 666) (2003).

636

building, he clearly recognized himself at the beginning of the videotape.[11] Fripp also testified that the presence of the camera was one of the reasons he was comfortable leaving his tools outside when he entered the building. The videotape was introduced and admitted during the testimony of Gundich, who stated that he initially viewed the footage at the U. S. Attorney's Office shortly after the incident. Over Sheppard's objection, Gundich testified that because the date and time shown on the videotape coincided with the theft, he believed it was made contemporaneously.

Under the specific facts of this case, including Fripp's testimony that he recognized himself on the tape and Gundich's and Tolbert's testimony that they viewed the tape at the U. S. Attorney's Office shortly after the theft, and given Sheppard's argument on appeal, we discern no abuse of discretion in the trial court's admission of the videotape.[12]

3. Next, Sheppard argues that the trial court erred in denying his motion for a directed verdict because the State failed to prove that the value of the stolen property was in excess of $500. We disagree.

The testimony of an owner of property as to its value, without giving reasons therefor, is insufficient.[13] However, "[a]n owner does not have to be an expert to testify as to the value of his property (or that property under his control), provided he has experience or familiarity with such values."[14] "The weight to be given opinion evidence of market value is a matter for the jury."[15]

Here, Fripp testified as to the market value for each of the items stolen from him, and the total value exceeded $500.[16] Fripp also

---

[11] We note that "[a] videotape is admissible where the operator of the machine which produced it or one who personally witnessed the events recorded testifies that the videotape accurately portrayed what the witness saw take place at the time the events occurred." (Punctuation omitted.) *Ross*, 262 Ga. App. at 326-327 (4). Here, although Fripp testified that he recognized himself on the videotape, he did not testify that the tape accurately depicted the events of that day. Compare *Hudson v. State*, 273 Ga. 124, 126-127 (3) (538 SE2d 751) (2000) (audiotape of 911 call properly admitted because the victim testified that she had reviewed the tape and that it was an accurate depiction of her conversation with 911 operator); *Smallwood v. State*, 296 Ga. App. 16, 22 (4) (a) (673 SE2d 537) (2009) (videotape was properly authenticated and admissible because witnesses portrayed in the tape identified their own voices and testified that the tape accurately depicted their conversation); *Wallace v. State*, 267 Ga. App. 801, 804 (1) (600 SE2d 808) (2004) (videotape of robbery of convenience store properly admitted because the cashier testified that it accurately portrayed the robbery).

[12] See OCGA § 24-4-48 (c); *Dae*, 295 Ga. App. at 821 (2).

[13] See *Barron v. State*, 291 Ga. App. 494, 496 (1) (662 SE2d 285) (2008).

[14] *Williams*, 246 Ga. App. at 352 (2). See also OCGA § 24-9-66 ("[o]ne need not be an expert or dealer in the article in question but may testify as to its value if he has had an opportunity for forming a correct opinion").

[15] *Barron*, 291 Ga. App. at 496 (1).

[16] Fripp also testified that the replacement cost of the stolen items exceeded $2,000.

stated that he had used the type of tools stolen from him "since [he] was old enough to get up to it, [sic] probably." He utilized and purchased these types of tools during the eight years he had worked for Advanced Door and for some time before that. According to Fripp, he based his opinion as to the market value of the stolen tools on the age of the tools and his experience using and purchasing them. Thus, because Fripp established that he had an opportunity to form a correct opinion, the trial court did not err in concluding that his testimony was sufficient to allow the felony theft charge to go to the jury.[17]

4. Sheppard also alleges that the State failed to prove his guilt beyond a reasonable doubt. Given the testimony of Fripp, the police officers, the pawnbroker, and the videotape of the crime, we conclude that the evidence was sufficient to support the guilty verdict.[18]

5. In his final enumeration, Sheppard argues that the trial court erred in sentencing him as a recidivist because the State failed to meet its burden of showing that he was the same person convicted of the prior crimes. This argument is without merit.

At the sentencing hearing, the State sought to have Sheppard sentenced as a recidivist,[19] introducing a certified copy of a 1993 Chatham County conviction of "Duaine R. Sheppard, Jr.," for cruelty to a child. The Chatham County indictment charged that the accused committed the crime against Velecia Ott in May 1992.[20] The 1993 sentence sheet listed the defendant's attorney as "Gregory Bennett" and reflected that the defendant was placed on four years probation.

Sheppard testified at the hearing, denying that he entered a plea to the 1993 crimes.[21] During cross-examination by the State, Sheppard conceded that his legal name was "Duaine Ralph Sheppard, Jr.," and he admitted that he lived next door to Velecia Ott in

---

[17] See id. (testimony of witnesses' opinion that the value of stolen equipment exceeded $500 was sufficient because they had experience "in dealing with" that type of equipment); *Williams*, 246 Ga. App. at 352-353 (2) (the value of stolen equipment sufficiently established by testimony from a pawnbroker who purchased some of the stolen items, coupled with the testimony of a witness who testified that he regularly used the equipment, had checked out the cost of the new equipment, and was familiar with the cost and age of the stolen equipment); *Morris v. State*, 164 Ga. App. 42, 45 (3) (296 SE2d 247) (1982) (value of stolen construction materials sufficiently established by the testimony of the owner who based his opinion on his experience in shopping for and purchasing the material and the stolen items).

[18] See OCGA § 16-8-2; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[19] See OCGA § 17-10-7 (a).

[20] The indictment also charged Sheppard with aggravated assault and possession of a firearm during the commission of a crime, but the State entered a nolle prosequi on those charges.

[21] Sheppard denied any knowledge of the charges whatsoever.

Chatham County in 1992 and 1993. Sheppard testified that the only other person named "Duaine R. Sheppard" was his father, who lived in Colorado at the time of the sentencing hearing; Sheppard did not know where his father lived in 1992. Sheppard stated that he had no knowledge of anyone assuming his identity. He testified that he was represented by an attorney named Gregory Bennett in the past, but he could not recall the timing of such representation. When the prosecutor asked him whether he was on felony probation in 1993 through 1995, Sheppard replied, "I have no recollection . . . of that."

In a similar circumstance, in *Nash v. State*,[22] the Supreme Court of Georgia set forth the proper allocation of burdens of proof applicable to the use of a defendant's prior guilty plea for recidivist sentencing purposes, specifically addressing the issue of demonstrating whether the prior plea was knowingly and voluntarily entered.[23] *Nash* placed the initial burden on the State in noncapital cases to prove both the existence of the prior guilty plea and that the defendant was represented by counsel in felony cases and all misdemeanor cases resulting in imprisonment.[24] Upon such a showing,

> the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [The defendant] can attempt to meet his burden of production with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence. . . . If the defendant is able to present evidence that a constitutional infirmity exists, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, . . . the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and volun-

---

[22] 271 Ga. 281 (519 SE2d 893) (1999).
[23] See id. at 281.
[24] See id. at 285.

tary, and made with an articulated waiver of the . . . *Boykin* rights.[25]

Applying the *Nash* burden allocation to the instant case, by tendering the certified copy of the plea, the State met its initial burden of proving that Sheppard had entered the 1993 guilty plea.[26] And given Sheppard's testimony as elicited by the State and the signatures on the guilty plea and the indictment in this case, the trial court did not err in considering the prior plea in sentencing Sheppard as a recidivist.[27]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED OCTOBER 27, 2009.

*James W. Krembs*, for appellant.
*Larry Chisolm, District Attorney, Isabel M. Pauley, Assistant District Attorney*, for appellee.

---

[25] (Citations and punctuation omitted.) Id.

[26] See *Mincey v. State*, 186 Ga. App. 839, 841 (4) (368 SE2d 796) (1988) (" '[c]oncordance of name alone is some evidence of identity' ").

[27] Cf. *Hampton v. State*, 287 Ga. App. 896, 900-901 (3) (652 SE2d 915) (2007).