A10A1569. RUSHING v. THE STATE.

(700 SE2d 620)

JOHNSON, Judge.

Following a bench trial, a judge found Gregory Rushing guilty of theft by taking. Rushing appeals, alleging the trial court erred in denying his motion for a directed verdict of acquittal, the trial court abused its discretion in qualifying a witness as an expert, and the state failed to meet its burden of proof as to the fair market value of the trailer. We find no error and affirm Rushing's conviction for theft by taking a six-car hauling trailer.

1. Rushing first asserts the trial court erred in denying his motion for a directed verdict of acquittal at the conclusion of the state's case because there was insufficient evidence to prove the elements of theft by taking beyond a reasonable doubt. We disagree.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction.[1] We view the evidence in the light most favorable to support the trial court's finding of guilt, and the defendant no longer enjoys a presumption of innocence; moreover, this Court gives due regard to the trial court's opportunity to judge witness credibility, and we do not weigh the evidence or

---

[1] See *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007).

determine witness credibility.[2] "It is not for us to determine or question how the [factfinder] resolved any apparent conflicts or uncertainties in the evidence."[3] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the trial court's verdict.[4]

Viewed in that light, the evidence shows that on March 1, 2008, Rushing entered into a verbal agreement with Trucks Transport, Inc., a company owned by Winston Simms and Jimmy Wilkins, to purchase a Kaufman six-car hauling trailer from Wilkins. The trailer was stored at Wilkins' home. According to Simms and Wilkins, the agreement was that Rushing would make the first payment on the date he picked up the trailer from Wilkins and then make monthly payments until the trailer had been paid for in full. Simms specifically told Rushing, "Before you take it, you know, I need some money." Nevertheless, Rushing took the trailer when no one was present and did not leave any payment for the trailer. According to Simms, Rushing telephoned him and said he had picked up the trailer, but did not have any money and could not leave a down payment. When asked to return the trailer, Rushing told Simms he was out of town for a few weeks but would give him a down payment when he returned, and Simms agreed to that arrangement. However, Rushing never returned the trailer or provided a down payment for the trailer.

Approximately two weeks after Rushing took the trailer, Rushing informed Simms that the trailer had broken down in Texas, but Rushing could not tell Simms where he broke down or where the trailer was located. Simms telephoned Rushing several times and told Rushing that the trailer was going to be repossessed and that he needed to know where the trailer was located so he could tell the repossession company. However, Rushing still refused to tell Simms where the trailer was located. All he told Simms was that he had bought a new trailer and did not have the one he had taken from Wilkins' property; then he hung up on Simms.

Rushing stopped taking Simms' and Wilkins' telephone calls, and "[h]e no longer called giving any explanations about the trailer. The last time, he said it was in some warehouse across the street from where his truck was serviced. And after that, then he didn't know where the trailer was. . . . [I]t was hard getting in contact with him." In addition, Rushing refused to provide the repossession company with any information about the trailer's location, and the

---

[2] *Sheppard v. State*, 300 Ga. App. 631 (686 SE2d 295) (2009).

[3] (Citation and punctuation omitted.) *Thompson v. State*, 281 Ga. App. 627, 629 (1) (636 SE2d 779) (2006).

[4] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

repossession company could not locate the trailer during its investigation into the matter. On or about April 23, 2008, Wilkins contacted the Henry County Police Department and reported the trailer stolen. A grand jury indicted Rushing for theft by taking.

At trial, Rushing testified that faced with an exorbitant amount to tow the trailer, he left it along the highway in Texas, purchased another vehicle, and continued back to Georgia. According to Rushing, he called Simms, told him the truck had broken down, and Simms told him to leave it and he would have someone come get it.

OCGA § 16-8-2 provides that a person commits the offense of theft by taking when he "unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." Rushing argues that the state did not prove he had a fraudulent intent to deprive Simms and Wilkins of their property, arguing that his understanding of the oral agreement differed from Simms' and Wilkins' understanding and that Simms and Wilkins told him they would pick up the trailer in Texas. However, this Court does not resolve evidentiary conflicts or weigh the credibility of the witnesses. Whether Rushing intended to deprive Simms and Wilkins of their property was a question for the trier of fact, and the trier of fact was not required to believe Rushing's testimony.[5]

Moreover, the manner in which the property is appropriated is irrelevant.[6] Even if the trial court had accepted Rushing's claim that he lawfully appropriated the trailer, the evidence supports a finding that although Rushing may have had lawful possession of the truck initially, he failed to return the truck, or even provide Simms with the location of the truck upon Simms' demands. Rushing's response to Simms' demands showed that he intended to withhold the truck from Simms and Wilkins for an indefinite period of time.[7] The evidence was sufficient for a rational trier of fact to infer that Rushing acted with criminal intent and to find him guilty of theft by taking.[8] A directed verdict of acquittal was not authorized.

2. Rushing contends the trial court abused its discretion in qualifying Ernest Gunn as an expert witness. Gunn was offered and tendered as an expert in the field of valuation of equipment, and he testified at the restitution hearing that the fair market value of the trailer in question was between $13,000 and $15,000. According to

---

[5] See *Matthiessen v. State*, 277 Ga. App. 54, 56 (1) (625 SE2d 422) (2005).
[6] See *Tate v. Holloway*, 231 Ga. App. 831, 834 (499 SE2d 72) (1998).
[7] See id.
[8] *Matthiessen*, supra.

Rushing, the trial court acted arbitrarily in determining that Gunn had the requisite knowledge, experience, and skill to give expert testimony. We find no abuse of discretion.

The decision to qualify or reject a witness as an expert rests within the sound discretion of the trial court, and this decision will not be disturbed on appeal absent manifest abuse.[9] "To qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter."[10]

Here, Gunn testified that he had been in the repossession business twenty-two years, with another six or eight years dealing specifically with equipment repossession, that he was qualified to estimate the value and condition of transportation equipment, and that he had been qualified as an expert fifteen to twenty times in other court proceedings. The trial court did not abuse its discretion in qualifying Gunn as an expert witness in the valuation of transportation equipment.

3. Rushing maintains the state failed to establish that the fair market value of the trailer was $13,000, the amount assessed as restitution by the trial court. However, Gunn testified that based on his experience, the fair market value of the trailer would be between $13,000 and $15,000. He arrived at this figure after performing a comparative analysis of other similar trailers and taking into consideration depreciation from the original purchase price of the used trailer. Gunn supported his conclusion by noting that the trailer would have had to be in good condition in order to pass the DOT inspection and be able to drive to Texas. While Rushing cites numerous facts in an attempt to discredit the expert's valuation, "the weight to be given opinion evidence of market value is a matter for the [factfinder]."[11] Evidence of Gunn's experience in the equipment valuation field "provided evidence of an obvious opportunity to gain familiarity with equipment values ... creating at least a minimal basis for that value evidence."[12] The evidence shows that there was a basis for the value stated by Gunn, and the trial court did not err in assessing the value of the trailer at $13,000.

*Judgment affirmed. Miller, C. J., and Phipps, P. J., concur.*

DECIDED AUGUST 19, 2010.

*Charles D. Hodges*, for appellant.

---

[9] See *Bridges v. State*, 279 Ga. 351, 354 (3) (613 SE2d 621) (2005); *Gulley v. State*, 244 Ga. App. 629, 630 (1) (536 SE2d 530) (2000).

[10] (Citation and punctuation omitted.) *Gulley*, supra.

[11] (Citation and punctuation omitted.) *Sheppard*, supra at 636 (3).

[12] *Ragsdale v. State*, 170 Ga. App. 448, 450 (317 SE2d 288) (1984).

*Tommy K. Floyd, District Attorney, John A. Pipkin III, Assistant District Attorney*, for appellee.