**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 25, 2012**

# In the Court of Appeals of Georgia

A12A1458. BAILEY v. THE STATE.

BARNES, Presiding Judge.

Brian Bailey and his brother Emmanuel Bailey were jointly indicted on 26 felony counts, including aggravated assault, burglary, entering a car with the intent to commit theft, firearms possession by a convicted felon, and other theft charges related to a burglary and a string of automobile break-ins and thefts in November and December 2009. Bailey's brother pled guilty to the charges against him and testified as a defense witness that he committed all of the crimes by himself except one, which he committed with someone other than Bailey. A jury convicted Bailey of all charges except the aggravated assault, and after merging some offenses with others, the trial court sentenced him to an aggregate of 20 years, 12 to be served in custody. Bailey appeals, arguing that the State's circumstantial evidence was insufficient to authorize

a rational trier of fact to find him guilty of the crimes for which he was convicted because it did not eliminate the reasonable possibility that Bailey's brother committed the offenses alone or with another man.[1] After reviewing the briefs and the record, we affirm the trial court's denial of Bailey's motion for new trial.

On appeal, we view the evidence in the light most favorable to the verdict, and Bailey no longer enjoys a presumption of innocence. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005). This court determines only the sufficiency of the evidence, not the credibility of the witnesses, which is determined by the trier of fact. *Matthiessen v. State*, 277 Ga. App. 54 (625 SE2d 422) (2005); *O'Bear v. State*, 156 Ga. App. 100, 101 (1) (274 SE2d 54) (1980).

Under OCGA § 24-4-6, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." While mere suspicion is insufficient to support a conviction, "the proved facts need exclude only reasonable hypotheses – not bare possibilities that the crimes could have been committed by someone else." *Morris v. State*, 202 Ga. App. 673, 674 (415 SE2d

---

[1]Bailey does not argue that the evidence was insufficient to sustain his convictions for felony obstruction of a law enforcement officer and interference with government property for kicking out the back window of a patrol car.

485) (1992); *Locklear v. State*, 249 Ga. App. 104, 105 (1) (547 SE2d 764) (2001). Unless the verdict is unsupportable as a matter of law, this court will not disturb the jury's finding that the evidence was sufficient to exclude every reasonable hypothesis save that of guilt. *Morris v. State*, 202 Ga. App. at 674.

The presentation of evidence during Bailey's five-day trial was complex. The State called 46 witnesses and introduced hundreds of exhibits, many of them photographs of stolen items later found in residences connected to Bailey. That a burglary and thefts occurred and that the police found stolen items are not issues on appeal. At issue is whether the State presented sufficient evidence for the jury to conclude that Bailey, with or without his brother, committed these offenses.

We commend both parties to this appeal for their detailed, comprehensive briefs citing properly to the voluminous appellate record. The parties properly supported the factual statements in their briefs by citations to the record, and likewise supported their legal propositions by citations to applicable statutes and case law.

Considered in the light most favorable to the verdict, three victims testified that they discovered crimes involving their vehicles on November 24, 2009. Personal items had been stolen from the cars of two victims, and the third victim's van had been stolen. Two days later, on November 26, 2009, victims from three more

households awoke to find the contents of their vehicles in disarray with items missing, and one victim's work van was gone. Two days after that, five victims who lived on the same street found that their vehicles had been entered with property missing, and a sixth victim's van was stolen. On December 1, 2009, four more victims, all living on the same street, found that their vehicles had been entered and property was missing, as did three additional victims on December 3, 2009. On December 10, 2009, four victims from two houses close to each other discovered that their vehicles had been entered and property was gone, and a fifth victim's Buick LeSabre was gone.

On December 11, 2009, a man came home mid-morning to find the stolen LeSabre in his carport. Two men were in the car, which pulled out quickly and clipped the victim's leg as it left the premises. Before the victim entered his house to find it ransacked and items missing, he called 911 to report the license plate number, and the police found the car abandoned a few blocks away with the engine still warm. A package in the LeSabre was addressed to Bailey's sister at 2500 Martin Luther King Boulevard ("MLK Boulevard"), and outside of 2500 MLK Boulevard, officers found an empty package addressed to the LeSabre's owner.

4

After obtaining and executing a search warrant, the police found the LeSabre license plate inside the residence, along with property stolen from 12 different victims. Bailey's mother told police that she and her sons used the residence to store things, and Bailey subsequently admitted to having been in the residence a day or two before it was searched. Arrest warrants were issued for both Brian and Emmanuel Bailey, and Emmanuel was arrested.[2] In a recorded telephone call from Bailey to Emmanuel in jail, Emmanuel warned Bailey that the police were looking for him. Bailey asked Emmanuel about the location of a certain bag, which led the police to obtain a backpack Emmanuel had left at his mother's house. Inside the backpack were several stolen items that were subsequently identified by victims of the November to December 2009 crime spree.

The police attempted to locate Bailey at a house he had been renting at 2303 MLK Boulevard. Outside the residence they found a credit card belonging to one of the victims. As with the house at 2500 MLK Boulevard, the house at 2303 MLK Boulevard appeared to be a "stash house," used to store items after they were stolen and before they were sold. Inside the residence was mail addressed to 2502

---

[2]To avoid confusion, Emmanuel Bailey will be referred to as simply "Emmanuel."

Boulevard, which is the address some utility services used to identify the house otherwise known as 2500 MLK Boulevard, as well as numerous stolen items later identified by victims.

The State presented extensive fingerprint evidence. Bailey's fingerprint was found on a Cheez-It box found in the shrubbery of a house a few doors away from the house where the LeSabre was stolen, and next to the box was a radio faceplate stolen from another car on the same street. Bailey left two fingerprints on the outside front passenger window of the stolen LeSabre, and his brother left a print on the inside of the passenger window. Finally, Bailey left fingerprints on a blue metal box stolen from that house and recovered from 2500 MLK Boulevard.

The State also introduced similar transaction evidence that Bailey pled guilty to stealing an automobile in February 2005, and again in January 2006.

Emmanuel Bailey testified for the defense that he pled guilty to the charges against him and that Bailey neither assisted nor was present at any of the thefts. Emmanuel testified he took the Cheez-It box from 2303 MLK Boulevard, where Bailey had eaten from it, and left it in the bushes near one of the crime scenes, and that the other man in the car at the burglary was a man named "Charles," who was a "crackhead [he met] in the street." Emmanuel further testified he had sold most of the

6

stolen items to support his habit of smoking crack cocaine, but he left the items he did not sell at either 2303 or 2500 MLK Boulevard. He said he drove the LeSabre from the burglary to 2303, but when Bailey told him he was about to be evicted from there, he drove to 2500 and left the stolen property he had in the car. On cross-examination, the State impeached Emmanuel with evidence of three prior felony convictions, two for receiving stolen property and one for entering an automobile with the intent to commit theft.

Bailey argues that the circumstantial evidence against him was insufficient to eliminate the reasonable possibility that his brother committed the burglary with another man and all of the other offenses by himself. The existence of the evidence against him, he contends, could be explained in a manner consistent with him being not guilty. For example, his brother had access to both houses where stolen property was found, Bailey left a fingerprint on the Cheez-It box before his brother took it from their residence and dropped it at a crime scene, Bailey touched the blue box stolen during the burglary after his brother left it at 2500 MLK Boulevard, and Bailey's fingerprints on the outside of the stolen LeSabre did not prove he stole it or was ever inside the car.

In addition to Bailey's fingerprints on the stolen car, on a cracker box near the scene of the car theft, and on a stolen item found at 2500 MLK Boulevard, the recorded telephone call between Bailey and his brother in jail was incriminating. The State impeached Emmanuel Bailey's testimony that Bailey had nothing to do with the crimes by introducing evidence of his three prior felony convictions. As noted previously, circumstantial evidence need not exclude every conceivable hypothesis of a defendant's innocence, only reasonable ones, *Locklear v. State*, 249 Ga. App. at 105, and whether Bailey's alternative hypothesis was reasonable was a question for the jury to decide. The evidence here was sufficient to authorize a rational jury to find that the State had excluded every reasonable hypothesis other than Bailey's guilt and to find him guilty beyond a reasonable doubt of the crimes for which he was convicted. See OCGA § 24-4-6; *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979); *Crouch v. State*, 279 Ga. 879, 880 (1) (622 SE2d 818) (2005).

*Judgment affirmed. Adams and McFadden, JJ., concur.*

8